S13A0144. BILLINGS v. THE STATE.
S13A0145. ROSS v. THE STATE.
(745 SE2d 583)

NAHMIAS, Justice.

After a joint trial, appellants Curtis Billings and Matthew Ross (also known as Matthew Wells) were convicted of murder and other crimes related to the shooting death of Joseph Gunn.[1] For the reasons

---

[1] Gunn was killed on June 21, 2009. On November 19, 2010, Billings and Ross were indicted by a Cobb County grand jury for malice murder; four counts of felony murder based on the underlying felonies of aggravated assault, entering a motor vehicle with the intent to commit a theft, burglary, and theft by taking a firearm; and those four felonies. On May 13, 2011, after a jury trial, Billings was found guilty on all counts and Ross was found guilty on all counts except malice murder, the felony murder count based on aggravated assault, and aggravated assault.

Billings's felony murder convictions were vacated as a matter of law. The trial court merged his aggravated assault conviction into his malice murder conviction and then sentenced him to life in prison without the possibility of parole for malice murder and to consecutive prison terms of various years for the three remaining convictions.

The trial court sentenced Ross to life in prison with the possibility of parole on the felony murder conviction based on entering a motor vehicle with the intent to commit a theft and

that follow, we affirm their convictions and Billings's sentences, but we vacate Ross's sentences and remand his case for resentencing.

1. (a) The evidence at trial, viewed in the light most favorable to the verdict, showed the following. Around 3:00 a.m. on June 21, 2009, Gunn was helping his friend Lynn Quick move some desks from Quick's old residence to her new townhouse. Upon arriving at the townhouse, Gunn backed his truck into the garage to unload the desks. While assembling the desks inside, Gunn and Quick heard a noise in the garage, and they both went out there. The lights were not on, so the garage was "pretty dark." Quick saw a man standing on the passenger side of Gunn's truck and another man leaning into the truck on the driver's side. Gunn walked to the driver's side; Quick heard a shot; and both men fled. Gunn staggered toward Quick, saying that he had been shot. He died from a single gunshot wound to the chest. The bullet lacerated his lung and heart and exited through his back.

After the shooting, the .38-caliber revolver that Gunn had in his truck was missing. A .38-caliber shell was found in the driveway just outside the garage; it had white powder on it that looked like sheetrock powder. At trial, Detective Larry Wood testified that, because there was a sideways indentation in the wall behind the truck into which the shell fit perfectly and a mark on the ceiling just above the indentation in the wall, the bullet could have struck and ricocheted up off the back wall of the garage, ricocheted again off the ceiling, and ended up in the driveway. He also said it was possible that paramedics had simply kicked the bullet out of the garage. Detective Wood testified that his review of the crime scene showed that Gunn had been shot from the driver's side of his truck.

On July 8, 2009, 17 days after Gunn was shot, two Clark Atlanta University police officers were separately patrolling streets near the campus perimeter where some students' cars had been broken into. One officer saw Billings and Ross walking and glancing into cars. He called his partner and gave the location. When the first officer approached the two men, Billings pointed a gun at him. The officer

merged Ross's two other felony murder convictions into that conviction. The court then merged the burglary conviction into the felony murder conviction based on entering a vehicle with the intent to commit a theft and sentenced Ross to five consecutive years in prison on the conviction for entering a vehicle with the intent to commit a theft. The court sentenced Ross to ten consecutive years in prison for theft by taking. As explained in Division 1 (b) below, we find it necessary to vacate Ross's sentences and remand his case for resentencing.

Billings and Ross each filed a timely motion for new trial with new appellate counsel. The trial court summarily denied both motions on October 25, 2011, and Billings and Ross filed timely appeals. The appeals were docketed to the January 2013 term of this Court and submitted for decisions on the briefs.

backed up, but Billings fired. The officer fired back, as did his partner, who had arrived by that time. Billings was hit and went down. Ross, who did not fire at the officers, fell to the ground when the shooting started. Billings had a 9mm handgun, and Ross had a .38-caliber handgun, which turned out to be Gunn's missing revolver. A firearms expert testified that the shell casing found outside Quick's garage was fired from that revolver.

Billings and Ross were arrested, and Billings was taken to a hospital because of his gunshot injuries. Several days later, Billings told a detective that he was involved in Gunn's shooting. Billings said that he went into the driver's side of the truck; that he saw a gun in the center console, which he took; that he heard someone say "Hey" and thought someone was coming at him; that he heard a gunshot and fled; and that he did not shoot anyone. He also admitted that he later fired Gunn's .38-revolver into the air at his mother's house. About a week after his first statement, when the detective told Billings that forensic evidence showed that the victim had been shot from the driver's side of the truck, Billings changed his story to say that he had been on the passenger side, but he again denied shooting the victim. Billings also admitted that he had stolen the 9mm handgun that he had when he was arrested by breaking into another vehicle in Cobb County. The owner of that vehicle, who lived two miles from where Gunn was shot, testified that his 9mm gun was stolen from his vehicle in his garage about ten days after Gunn was shot.

Fredricka Ridley testified that on May 31, 2009, Billings and her brother, Antwain Ridley, got into an argument when Billings got mad at Antwain's sister and Antwain defended her. Someone stopped the argument and told everybody to leave. Fredricka thought that Billings had gone into his apartment, but shortly thereafter, he came around the side of the apartment building, shot Antwain in the stomach, stomped on him when he fell down, and then put the gun to his head and said "I'll kill you."

A woman who was dating Ross in June 2009 testified that, at some point during that month, Ross told her that the night before, he and Billings were breaking into cars and that Billings shot a man who approached him on the side of the vehicle by which Billings was standing.

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Billings and Ross guilty beyond a reasonable doubt of the crimes of which they were convicted and sentenced. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also OCGA § 16-2-20 (parties to crime); *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine

the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

(b) Billings was lawfully sentenced, but Ross's sentences are problematic. The trial court sentenced Ross to life in prison with the possibility of parole on Count 3 of the indictment, which charged felony murder based on entering a motor vehicle with the intent to commit a theft; it then merged Ross's two other felony murder convictions (Count 4 based on burglary and Count 5 based on theft by taking) into Count 3. So far, so good.

But the court then merged Count 8 (burglary) into Count 3 (felony murder based on entering a vehicle with the intent to commit a theft) and sentenced Ross to five years in prison on Count 7 (entering a vehicle with the intent to commit a theft). That was error. A burglary conviction does *not* merge into a conviction for felony murder based on entering a vehicle, while a conviction for entering a vehicle *does* merge into a felony murder conviction based on that same felony. If the court meant to sentence Ross on the Count 3 felony murder based on entering a vehicle, it then needed to merge the Count 7 conviction for entering a vehicle and to sentence Ross separately for the Count 8 burglary. Or the trial court may have intended to sentence Ross on the Count 4 felony murder conviction based on burglary, in which case it would be proper to merge the Count 8 burglary conviction into Count 4 and to sentence Ross separately for the Count 7 entering-a-vehicle conviction. Either of those sets of sentences would be lawful, but the set of sentences the record indicates was imposed is not valid, and we must therefore vacate Ross's sentences and remand his case for resentencing.

### Case No. S13A0144

2. For his motion for new trial, Billings had the assistance of new appellate counsel, who contended that his trial counsel had been constitutionally ineffective. After holding a hearing, the trial court rejected that claim, and Billings then filed this appeal. He now moves to remand his case to the trial court for another hearing, asserting that since the original hearing he has discovered "additional evidence . . . that could provide additional grounds for a claim of ineffective assistance of trial counsel." Billings does not specify what the new evidence and grounds are, but in any event, a defendant must raise "all allegations of ineffective assistance of counsel at the earliest practicable moment, and any allegation not raised is deemed waived." *Dunn v. State*, 291 Ga. 551, 553-554 (732 SE2d 524) (2012) (citation omitted). Billings had the opportunity with his current appellate counsel to raise allegations of ineffective assistance of trial counsel at

the motion for new trial hearing, and he indeed raised some such claims. We therefore deny his motion to remand his case to allow him to raise additional allegations. See id.

3. Billings contends that the trial court erred in admitting the evidence regarding his shooting of Antwain Ridley as a similar transaction.[2] We need not determine whether the trial court abused its discretion in admitting this evidence, however, because it is clear that any error was harmless. Given the overwhelming evidence of Billings's guilt — including his admissions to the police, his and his partner Ross's possession of the victim's gun, his stealing another gun from a vehicle in a garage near the garage where Gunn had been shot just ten days before, and his impetuous shooting at the police officer in the incident that led to his arrest — it is highly probable that any error in admitting the evidence regarding the Ridley incident did not contribute to the verdict. See *Lindsey v. State*, 282 Ga. 447, 450 (651 SE2d 66) (2007) ("The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." (citation omitted)).

4. Billings next argues that the trial court erred in allowing Ross's girlfriend to testify that Ross told her around the time of Gunn's murder that the night before, Billings had shot a man while they were breaking into cars. Billings asserts that the girlfriend's testimony violated his Sixth Amendment right of confrontation as interpreted in *Bruton v. United States*, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968).[3] Billings is wrong.

The admission of an out-of-court statement into evidence at a criminal trial comes within the scope of the Confrontation Clause only if the statement was "testimonial." *Glover v. State*, 285 Ga. 461, 462 (678 SE2d 476) (2009); *Davis v. Washington*, 547 U. S. 813, 821-822 (126 SCt 2266, 165 LE2d 224) (2006). See generally *Crawford v. Washington*, 541 U. S. 36 (124 SCt 1354, 158 LE2d 177) (2004). Thus, the rule set forth in *Bruton*, which bars the admission at a joint trial of a co-defendant's confession to police that implicates the

---

[2] The Attorney General contends that Billings did not properly preserve this issue for appeal. However, the record shows that Billings objected to this evidence at a similar transaction hearing held on the day the trial began, and the trial court ruled that the evidence would be admissible. Billings was not required to object again when the evidence was offered during trial in order to preserve the issue for appeal. See *Whitehead v. State*, 287 Ga. 242, 249 (695 SE2d 255) (2010).

[3] The Attorney General again contends that Billings failed to preserve this issue for appeal, claiming that he did not raise a *Bruton* objection to the testimony of Ross's girlfriend. But the record shows that, just before the girlfriend testified, Billings did object to her testimony on *Bruton* grounds and the trial court ruled that the testimony was admissible.

defendant if the co-defendant does not testify and face cross-examination, does not apply to *non-testimonial* out-of-court statements made by such a co-defendant. See, e.g., *United States v. Berrios*, 676 F3d 118, 128 (3d Cir. 2012); *United States v. Dale*, 614 F3d 942, 956 (8th Cir. 2010); *United States v. Figueroa-Cartagena*, 612 F3d 69, 85 (1st Cir. 2010). See also *Colton v. State*, 292 Ga. 509, 512 (739 SE2d 380) (2013) (explaining that whether *Bruton* applies depends on whether the co-defendant's statement was "testimonial in nature," and is not limited to statements the co-defendant made to the police while in custody).

The statements by Ross at issue here were made to his girlfriend more than two weeks before he was arrested; they were not a product of interrogation by law enforcement officers during an investigation intended to produce evidence for a criminal prosecution. See *Davis*, 547 U. S. at 822. Compare *Colton*, 292 Ga. at 512. Billings does not even argue that Ross's statements were testimonial, and they clearly were not. Thus, only the " 'normal rules regarding the admission of hearsay apply,' " *Glover*, 285 Ga. at 462 (citation omitted), and the hearsay testimony about Ross's statements was admissible under the co-conspirator exception to the hearsay rule. See former OCGA § 24-3-5; *Allen v. State*, 288 Ga. 263, 266-267 (702 SE2d 869) (2010).[4]

5. Finally, Billings contends that his trial counsel was constitutionally ineffective for failing to object to Detective Wood's testimony that the .38-caliber shell found in Quick's driveway might have landed there after ricocheting off the garage ceiling and that Gunn was shot from the driver's side of his truck. Billings says that this was expert testimony that Detective Wood was not qualified to give. To prevail on this claim, Billings must show that his trial counsel's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). "This burden, although not impossible to carry, is a heavy one." *Young v. State*, 292 Ga. 443, 445 (738 SE2d 575) (2013) (citing *Kimmelman v. Morrison*, 477 U. S. 365, 382 (106 SCt 2574, 91 LE2d 305) (1986)).

" 'To qualify as an expert . . . [,] generally all that is required is that a person must have been educated in a particular skill

---

[4] This case was tried under Georgia's old Evidence Code. In the new Evidence Code, which applies to cases tried after January 1, 2013, the admission of co-conspirator statements is governed by OCGA § 24-8-801 (d) (2) (E).

or profession; his special knowledge may be derived from experience as well as study. Formal education in the subject at hand is not a prerequisite for expert status.' "

*Thomas v. State,* 290 Ga. 653, 658 (723 SE2d 885) (2012) (citation omitted). The trial court's ruling on this issue is reviewed only for abuse of discretion. See id.

At trial, Detective Wood testified that he was employed as a forensic evidence specialist, was certified as a crime scene investigator by the State of Georgia and by a national organization, and had been investigating crime scenes for a total of 29 years. Based on this evidence, if Billings's trial counsel had objected to Detective Wood's qualifications as an expert, the trial court would have been well within its discretion to overrule the objection and allow the detective's testimony about the crime scene. Because the trial court would not have been required to sustain an objection to the testimony about which Billings now complains, his trial counsel's failure to make such an objection does not show that he was denied the effective assistance of counsel. See *Yancey v. State,* 292 Ga. 812 (740 SE2d 628) (2013).

## Case No. S13A0145

6. Ross argues first that the trial court erred in denying his motion to sever his trial from Billings's trial.

In a murder case where the death penalty is not sought, the trial court has broad discretion to grant or deny a motion for severance. In ruling on a severance motion, the court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses.

*Herbert v. State,* 288 Ga. 843, 845 (708 SE2d 260) (2011) (citations omitted).

Ross contends that severance was warranted in this case because there was a possibility that the jury would consider against him the similar transaction evidence that was admissible only against Billings. However, because that evidence did not directly implicate Ross and the trial court gave appropriate limiting instructions, cautioning the jury that the similar transaction evidence could be considered only against Billings, the court acted within its discretion in determining that this factor did not require separate trials. See *Hightower v. State,* 263 Ga. 375, 375-376 (434 SE2d 491) (1993). See also *Moon*

*v. State*, 288 Ga. 508, 510 (705 SE2d 649) (2011). Ross also contends that because the evidence against Billings was stronger than the evidence against him, there was a likelihood that the jury would find Ross guilty by association with Billings. But "[i]t is not enough for the defendant to show that he or she would have a better chance of acquittal at a separate trial or that the evidence against a co-defendant is stronger." Id. at 509-510 (citation omitted). Instead, "[t]he defendant must show clearly that a joint trial prejudiced his defense, resulting in a denial of due process." *Herbert*, 288 Ga. at 845. Ross has not made this showing. For these reasons, the trial court did not abuse its broad discretion in denying his motion for a separate trial.

7. On redirect examination, in response to a question from the prosecutor asking her whether the two men in her garage "could" have been Billings and Ross, Quick answered, "Yes." Billings and Ross both objected, and the trial court sustained the objection on the ground that the testimony was mere speculation. The court instructed the jury to disregard Quick's answer. Billings then moved for a mistrial, but Ross did not make his own mistrial motion or join in Billings's motion. The court denied Billings's motion.

Ross asserts that Billings's motion for a mistrial was sufficient to preserve the issue so that Ross can challenge the trial court's denial of the motion on appeal. That is incorrect; Ross forfeited his right to appeal that ruling. See *Mathis v. State*, 291 Ga. 268, 271 (728 SE2d 661) (2012) (holding that a defendant's failure to object or join in a co-defendant's objection to an issue bars the defendant from raising the issue on appeal); *Stokes v. State*, 281 Ga. 875, 877 (644 SE2d 116) (2007) (holding that a defendant is barred from contending on appeal that the trial court erred in denying a mistrial motion when he acquiesced in the court's decision to give curative instructions and did not then renew his own motion for mistrial or join in his co-defendant's renewal of the motion).

To the extent that Ross contends that his trial counsel was ineffective in failing to preserve this issue for appeal, he again is incorrect. " 'Whether to grant a motion for mistrial is within the trial court's sound discretion, and the trial court's exercise of that discretion will not be disturbed on appeal unless a mistrial is essential to preserve the defendant's right to a fair trial.' " *Childs v. State*, 287 Ga. 488, 492 (696 SE2d 670) (2010) (citation omitted). Quick had testified on both direct and cross-examination that she could not identify the two men she saw in her garage or even describe them beyond saying that they were both black males. And after the prosecutor asked Quick to speculate about whether the two men could have been Billings and Ross, the trial court sustained the objection and gave an appropriate curative instruction. Accordingly, the trial court would

have acted within its discretion in denying a motion for mistrial made by Ross, just as the court in fact denied Billings's mistrial motion. See id. The failure of Ross's trial counsel to make a motion that the court was authorized to deny does not establish ineffective assistance by that counsel. See *Yancey*, 292 Ga. at 818-819.

*Judgment affirmed in Case No. S13A0144. Judgment affirmed in part and vacated in part, and case remanded for resentencing in Case No. S13A0145. All the Justices concur.*

DECIDED JUNE 3, 2013.

*Kenneth R. Croy, Christopher R. Geel*, for appellant (case no. S13A0144).

*Michael J. Ivan*, for appellant (case no. S13A0145).

*Patrick H. Head, District Attorney, Daniel J. Quinn, Amelia G. Pray, John A. Pursley, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Brittany N. Jones, Assistant Attorney General*, for appellee.