**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 16, 2016**

# In the Court of Appeals of Georgia

A16A0041. MITCHELL v. THE STATE.                              DO-002 C

DOYLE, Chief Judge.

After a jury trial, Keith Allen Mitchell was convicted of making harassing phone calls,[1] burglary,[2] two counts of aggravated assault,[3] two counts of false imprisonment,[4] three counts of aggravated sodomy,[5] two counts of rape,[6] and

---

[1] OCGA § 16-11-39.1 (a) (1).

[2] OCGA § 16-7-1 (b).

[3] OCGA §§ 16-5-21 (b) (1) ("Count 4") & (b) (2) ("Count 3").

[4] OCGA § 16-5-41 (a).

[5] OCGA § 16-6-2 (a) (1).

[6] OCGA § 16-6-1 (a) (1).

possession of a knife during the commission of a crime.[7] The jury acquitted Mitchell of one count of theft by taking. After the trial court denied his motion for new trial, Mitchell filed this appeal, arguing that (1) the evidence was insufficient to support his conviction as to the two counts of false imprisonment; (2) the trial court erred by improperly instructing the jury as to venue; (3) the trial court erred by denying his motion for a mistrial following an officer's testimony regarding Mitchell's pre-trial detention; and (4) his sentence is void because the trial court failed to merge various counts for sentencing. For the reasons that follow, we affirm Mitchell's conviction, vacate his sentence, and remand the case for resentencing.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict."[8]

So viewed, the record shows that Mitchell and A. D. dated for approximately two months following a few months of phone and electronic communication, but A. D. eventually ended the relationship in March 2012. During April 2012, Mitchell

---

[7] OCGA § 16-11-106 (b) (1).

[8] (Citation and punctuation omitted.) *Ellis v. State*, 316 Ga. App. 352, 353 (729 SE2d 492) (2012).

repeatedly called A. D. attempting to reunite with her, threatening suicide or becoming irate, and on one such call he stated that A. D.'s father could stay with her as much as her father wanted, but at some point he would have to go home and then A. D. would be sorry.

Thereafter, on April, 29, 2012, around 5:00 p.m., A. D. returned home with her 12-year-old son, S. D., and went upstairs to her bedroom, where Mitchell accosted her, wielding a knife he had taken from her kitchen. A. D. was terrified and screamed, and Mitchell told her to be quiet, coming toward her with the knife in his hand and trying to put his other hand over her mouth to silence her. S. D. came to the bedroom after hearing his mother's screams, and A. D. put herself between Mitchell (who put the knife out of sight when S. D. entered the room) and S. D. Mitchell stated that he needed to talk to A. D., but she had been refusing to do so.

S. D. stated he needed to use the restroom, and Mitchell took him into the attached bathroom and closed him into the separate toilet area, making sure that S. D. did not have his cell phone. Mitchell told S. D. to stay in the bathroom because he needed to talk to A. D.

At this point, Mitchell returned to the bedroom, took a pair of pantyhose from a drawer where A. D. had not put them, and cut a hole in the pantyhose crotch, telling

3

A. D. to put them on and that he came for sex. A. D. removed her pants and put on the pantyhose, and Mitchell then demanded that she "suck [his] dick" and "whine." The knife was on the bed while A. D. performed this act, and Mitchell told A. D. that as long as she complied with him, he would not hurt her. Mitchell then had forcible vaginal intercourse with A. D. A. D. testified that neither sex act was consensual, and she believed that Mitchell would kill her and S. D.

S. D. then knocked on the bathroom door from inside, asking if he could come out, and Mitchell finally allowed S. D. out of the bathroom upon A. D.'s suggestion that he might be hungry; Mitchell escorted them downstairs, still holding the knife, and A. D. prepared food that S. D. and Mitchell ate. S. D. asked if he could play a videogame, and Mitchell said he could, but A. D. told S. D. to turn off a communication feature because she was afraid of what Mitchell might do if S. D. tried to call for help.

While S. D. was playing the game, Mitchell talked to A. D., accusing her of turning their friends against him, and she attempted to convince him otherwise; A. D. asked what Mitchell would do if someone was doing these acts against his niece. At that point, Mitchell became agitated again and told A. D. that he would "tell them they needed to do whatever they needed to do to stay alive and that's what [she]

4

need[ed] to do." Mitchell directed A. D. with the knife to return to her bedroom, and she asked him what was going to happen to her. Mitchell explained that he was going to stay, they would have sex all night, and then he would leave.

Mitchell then made A. D. put on pantyhose and a nightie before making her perform intercourse. Mitchell then discovered a butcher knife from on top of A. D.'s bedside table, which she had started keeping there when A. D. began making harassing calls to her. Mitchell confessed that he had slept in her backyard Thursday night, and came into her house on Friday and stayed in her attic and garage the Friday and Friday night before the Saturday of the assault.

A. D. attempted to talk to Mitchell to calm him down and suggested taking S. D. out to eat, so Mitchell allowed her to take them to a local fast food restaurant, where they ordered ice cream from the drive-through window. Mitchell had the knife in his pocket during this time, and he would pat his pocket during the trip.

S. D. attempted to stay in the vehicle when they arrived back home, but A. D. told him he needed to go back inside. Mitchell told A. D. the two of them needed to go back upstairs. Mitchell told her to "suck [his] dick," and then he asked if he could perform oral sex on her. A. D. testified that she "did not feel like [she] was in a

position that it was safe for [her] to say no." Mitchell then performed vaginal intercourse on A. D. again.

At this point, around 11:00 p.m., A. D. attempted to get Mitchell to leave, telling him he was not raping her and that she would not contact police. Mitchell retrieved his shoes from A. D.'s attic, and she told him she would give him money and drive him to a bus station. Mitchell made her leave her cell phone at home, and she withdrew $200 from a her bank for him on the way to the bus station; A. D. left Mitchell at the station, and then drove to a gas station where she called her father and told him about the events so he would meet her at her house. A. D. went home, where S. D. was sleeping, and she called police, who took her for a forensic evaluation at a local hospital.

After the evidence was presented to the jury, they found Mitchell guilty of all charges except theft by taking the knife from A. D.'s kitchen. Mitchell's motion for new trial was denied, and this appeal followed.

1. Mitchell argues that the evidence was insufficient to support his conviction as the two counts of false imprisonment because there was no evidence that Mitchell confined or detained the victims against their will.

OCGA § 16-5-41 (a) states that "[a] person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." While Mitchell contends that there is insufficient evidence to support his conviction on the two counts of false imprisonment, Mitchell actually attacks the credibility of A. D.'s testimony that the confinement was against her will because she cooked a meal for S. D. and took him and Mitchell to a local fast food restaurant. The record, however, established that Mitchell possessed a knife and threatened S. D. throughout the day-long encounter, including during the excursion from the house to the fast food restaurant. Moreover, evidence supported the jury's conviction of Mitchell for the false imprisonment of S. D. despite Mitchell's contention that S. D. (who was 12 at the time of trial) could not remember who made him stay in the home's bathroom while Mitchell raped and sodomized A. D. at knife-point in the adjoining bedroom.

> This court does not weigh the evidence or determine witness credibility; rather, we determine only whether the evidence was sufficient to enable a rational trier of fact to convict the defendant under the standard set forth in *Jackson v. Virginia*.[9] As long as there is some

---

[9] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

competent evidence to support each fact necessary to make out the [S]tate's case, we will uphold the jury's verdict.[10]

In this case, the jury's verdict was supported by A. D.'s testimony that the two victims were held by Mitchell in the home for approximately six hours, and she did not attempt to escape because she was afraid that Mitchell would harm her or S. D.,[11] as well as the testimony of both victims that Mitchell told S. D. to stay in the bathroom and patted him down for a cell phone.[12] Accordingly, this enumeration is without merit.

2. Mitchell next argues that the trial court violated OCGA § 17-8-57 by commenting on the evidence when charging the jury on venue. During the jury charge, the trial court instructed:

---

[10] (Footnotes omitted.) *Hammonds v. State*, 263 Ga. App. 5, 6 (1) (587 SE2d 161) (2003).

[11] See *Ellis*, 316 Ga. App. at 356 (1) (d) (testimony that the victim went with the defendant because she feared for the safety of her mother and did what defendant told her because she had no choice was sufficient to support his conviction for false imprisonment).

[12] See *Rehberger v. State*, 235 Ga. App. 827, 828 (1) (510 SE2d 594) (1998) (explaining that there is no specific length of time for a detention to constitute false imprisonment). Cf. *Lewis v. State*, 215 Ga. App. 161, 163 (2) (450 SE2d 448) (1994) ("The state of mind of the victim . . . is a question of fact, which may be established by circumstantial evidence.").

The law provides that criminal actions shall be tried in the County in which the crime was committed. Venue, *that is, the crime was committed in Cherokee County*, is a jurisdictional fact that must be proved by the State beyond a reasonable doubt as to each crime charged in the accusation just as any element of the offenses. Venue must be proved by direct or circumstantial evidence, or both.[13]

Mitchell argues that the language italicized above was an impermissible comment that venue had been proven. At the time of Mitchell's trial, OCGA § 17-8-57 provided that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." Nevertheless, a trial court's jury charge violates the statute "only when [its] instruction, considered as a whole, assumes certain things as facts and intimates to the jury what the [court] believes the evidence to be."[14]

In this case, the trial court's challenged statement did not reflect an opinion as to what had been proved; rather, it was an instruction of the specific fact that the State was required to prove venue beyond a reasonable doubt. The trial court's charge, as

---

[13] (Emphasis supplied.)

[14] (Citations and punctuation omitted.) *Simmons v. State*, 291 Ga. 705, 708 (5) (733 SE2d 280) (2012).

9

a whole, was a correct statement of the law — in order for the jury to convict Mitchell of the charged crimes the jury was required first to determine that the State properly tried him in the county in which the alleged crimes had to have occurred.[15] It was not an impermissible statement by the trial court that the crimes actually occurred in Cherokee County or that the State properly indicted Mitchell therein. Thus, there is no merit to Mitchell's claim that the trial court violated former OCGA § 17-8-57 by giving the standard pattern jury instruction on venue.[16] Accordingly, this enumeration is without merit.

3. Next, Mitchell contends that the trial court erred by denying his motion for mistrial following an officer's testimony regarding Mitchell's pre-trial detention.

At trial, an officer testified as follows regarding the collection of saliva from Mitchell: "It was on May 8, 2012, we met with Mr. Mitchell at the Cherokee County Jail[,] and I obtained a — four swabs of his — excuse me — four swabs of his

---

[15] See *State v. Dixon*, 286 Ga. 706, 707 (2) (691 SE2d 207) (2010); Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.51.10 (2007).

[16] See *Hargett v. State*, 285 Ga. 82, 87-88 (4) (674 SE2d 261) (2009) (no OCGA § 17-8-57 violation where trial court gave pattern jury charge on prior consistent statements).

10

saliva." At this point, Mitchell objected, contending that the State had introduced bad character evidence and requesting a mistrial. The trial court denied the motion.

Pretermitting whether the jury would have understood this comment to mean that Mitchell was housed in the jail at that time rather than understanding that Mitchell met with the officer at the jail, this was a passing reference to Mitchell's pre-trial incarnation for the charged offenses, and thus, there was no error in the trial court's denial of the motion for mistrial.[17]

4. Finally, Mitchell argues that his sentence is void because the trial court failed to merge various counts for sentencing purposes.

(a) Mitchell contends that Count 3, alleging aggravated assault with a deadly weapon, should have merged with Count 8, alleging rape, because both counts gave rise to the same conduct occurring on the same day.

> When a defendant is convicted of multiple crimes based upon the same act, the principle of factual merger operates to avoid the injustice [of multiple sentences for the same offense]. In *Drinkard v. [Walker]*,[18] [the] Supreme Court of Georgia adopted the "required evidence" test set forth by the Supreme Court of the United States to resolve these

---

[17] See, e.g., *Johnson v. State*, 256 Ga. 604-605 (2) (351 SE2d 623) (1987).

[18] 281 Ga. 211 (636 SE2d 530) (2006).

situations. Thus, to determine whether convictions for multiple crimes merge for purposes of sentencing, the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each [statutory] provision requires proof of a fact which the other does not. The test focuses on the evidence required to establish the statutory elements of each criminal offense, not the actual evidence presented at trial.[19]

Mitchell points to the trial court's merger of Count 4, alleging aggravated assault with intent to rape, with Count 8, alleging rape, in support of his contention that Count 3 should also have merged with Count 8. We agree with the trial court, however, that the indictment did not allege in Count 3 that the assault with the a deadly weapon occurred at the time of the rape, and the facts presented at trial show that Mitchell initially assaulted A. D. with the knife prior to falsely imprisoning A.

---

[19] (Footnotes and punctuation omitted.) *Gordon v. State*, __ Ga. App. __ (2) (Case No. A16A0177; decided on May 6, 2016), quoting *Nolley v. State*, 335 Ga. App. 539 (2) (782 SE2d 446) (2016), *Gordon*, 334 Ga. App. 633, 636 (780 SE2d 376) (2015), quoting *Drinkard*, 281 Ga. at 215, and citing *Blockburger v. United States*, 284 U. S. 299 (52 SCt 180, 76 LE 306) (1932). See also OCGA § 16-1-6 (1).

D. and S. D. in A. D.'s bedroom, demanding to "talk" with her. Accordingly, the trial court did not err by separately sentencing Mitchell on Count 3.[20]

(b) Mitchell also contends that the trial court erred by failing to merge two aggravated sodomy counts (7 and 12) and the two counts alleging rape (8 and 13) because the averments in the two counts in each group are indistinguishable from each other.

The evidence adduced at trial established at least two separate incidents of rape and two separate incidents of aggravated sodomy as alleged in Counts 7 and 12. Nevertheless, if "two charges are indistinguishable because all of the averments, including . . . victim[] and description of defendant's conduct constituting the offense were identical, only one sentence may be imposed."[21] In this case, Counts 7 and 12

---

[20] See *Bolden v. State*, 335 Ga. App. 653, 654-655 (1) (782 SE2d 708) (2016) ("In considering whether [offense merge], the court first considers whether the same conduct establish the commission of both offenses.").

[21] (Punctuation omitted.) *Hunt v. State*, __ Ga. App. __ (1) (b) (783 SE2d 456) (2016). See also *Taylor v. State*, 292 Ga. App. 846, 848-849 (2) (666 SE2d 85) (2008), overruled on other grounds, *Adams v. State*, 299 Ga. App. 39, 41-42 (1) (681 SE2d 725) (2009). Compare with *Copeland v. State*, 160 Ga. App. 786, 789 (11) (287 SE2d 120) (1982) ("The *indictments were drawn in such a fashion* as to authorize convictions (if supported by the evidence) for incest during one period of time, statutory rape on another occasion during that same period, and another count of statutory rape on a later date. The evidence did support a finding that at least two acts of intercourse occurred during the period covered by the incest charge and one of the

13

both charged that Mitchell "did place his sex organ in the mouth of [A. D.], said act being done with force and against the will of said other person, the allegations of this count of the indictment being separate and distinct from the allegations of any other count in this indictment." Counts 8 and 13 both charged that Mitchell "did have carnal knowledge with [A. D.], a female, forcibly and against her will, the allegations of this count of the indictment being separate and distinct from the allegations contained in any other count in this indictment." Although the indictments included the phrase "the allegations of this count of the indictment being separate and distinct from the allegations contained in any other count in this indictment," this phrase was not charged to the jury nor stated in the indictment as a material averment distinguishing the two counts.[22] For instance, in *Bloodworth v. State*,[23] the State made

statutory rape charges, and that another act of intercourse occurred on the date alleged in the second statutory rape count. It is clear, therefore, that the trial court committed no error in sentencing appellant on all three offenses.") (emphasis supplied).

[22] See *Hunt*, __ Ga. App. at 462 (holding insufficient to result in separate sentences averments contained in identical counts stating that the defendant "committ[ed] one of these crimes against K. B. within a certain range of dates, the exact date being unknown to the Grand Jury, with the only difference between the two counts in each pair being that the second count specified that the second occurrence of the same crime occurred on an occasion different or on a different date than the first occurrence") (punctuation omitted).

[23] 128 Ga. App. 657 (1) (197 SE2d 423) (1973).

14

material the normally immaterial date averred within the indictment by stating that "the date herein alleged being a material averment as to this count."[24] Accordingly, because the trial court erred by failing to merge Counts 7 with 12 and Counts 8 with 13, we vacate the sentence and remand for resentencing.[25]

(c) Mitchell also contends that two counts of aggravated sodomy should have merged into the third count. Count 11 charged Mitchell with forcibly placing his mouth on the sex organ of A. D., and therefore, it charged different conduct than Counts 7 and 12, which charged Mitchell with forcing his sex organ into A. D.'s mouth. Accordingly, it was not erroneous for the trial court to sentence Mitchell separately on Count 11.[26]

*Judgment of conviction affirmed; sentence vacated and case remanded. Andrews, P. J. and Ray, J., concur.*

---

[24] Id. at 657 (1).

[25] Id.

[26] See *Copeland*, 160 Ga. App. at 789 (11).