300 Ga. 500
FINAL COPY

S16A1528.  ALLEN v. THE STATE.

NAHMIAS, Justice.

Appellant Superiore Allen was indicted and tried along with Brandon Norwood and Santonio Lucas, and was convicted of malice murder and other crimes arising from the shooting deaths of Vandit Patel and Jimmy Prak. Appellant contends that the evidence presented at trial was legally insufficient to support his convictions and that the trial court erred in failing to dismiss two counts of the indictment against him and in admitting evidence contrary to Bruton v. United States, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968).  We affirm.[1]

---

[1]  The victims were killed on the morning of January 18, 2009.  On March 31, 2010, a Clayton County grand jury indicted Appellant, Norwood, and Lucas on two counts of malice murder, eight counts of felony murder, three counts of aggravated assault with a deadly weapon, two counts of armed robbery, two counts of possession of a firearm during the commission of a crime, one count of attempted possession of more than one ounce of marijuana, and one count of attempted armed robbery; the State later nolle prossed one of the felony murder counts as duplicative of a previous count.  The defendants were jointly tried from February 13 to 22, 2012.  The jury found Lucas guilty of attempted marijuana possession and attempted armed robbery, but acquitted him of the remaining counts; the Court of Appeals affirmed his convictions in Lucas v. State, 331 Ga. App. 455 (771 SE2d 142) (2015).  The jury found Norwood guilty of felony murder, aggravated assault, attempted marijuana possession, and attempted armed robbery, but acquitted him of the remaining charges; this Court affirmed his convictions in Norwood v. State, 297 Ga. 226 (773 SE2d 225) (2015).

1.     As summarized in this Court's opinion affirming Norwood's convictions, when viewed in the light most favorable to the verdicts, the evidence at trial showed the following:

[O]n January 18, 2009, Norwood, and his co-defendants [Appellant] and Santonio Demonta Lucas, planned to meet with Patel (a local marijuana dealer) and Prak at an apartment complex to conduct an arranged drug deal. However, the real plan was for [the defendants] to rob the drug dealers. Soon after Patel and Prak arrived to conduct the deal, Lucas, who was serving as the "lookout" for the planned robbery, followed them. Norwood and [Appellant] then started a physical fight with Patel and Prak. [Appellant] and Norwood chased the drug dealers as they tried to flee. [Appellant] went after Patel, and, when Patel fell over and rolled into the apartment complex parking lot, [Appellant] stood over him, shot him, and continued to punch and kick him. In the meantime, Norwood was beating up Prak in an outdoor area that was between two nearby apartments and across from the area where [Appellant] was beating Patel. [Appellant] then walked over to the area where Norwood was beating Prak and shot Prak in the head, killing him. [Appellant] then ran back over to Patel and shot him

As for Appellant, the jury acquitted him of the two armed robbery counts but found him guilty of all the other counts. On March 23, 2012, the trial court held a sentencing hearing at which it granted a directed verdict of acquittal on the count of felony murder against Patel based on aggravated assault by stabbing with a knife. The court sentenced Appellant to serve consecutive terms of life in prison for the malice murders of Patel and Prak plus consecutive or concurrent sentences for aggravated assault against Patel with a knife, attempted marijuana possession, and one count of possession of a firearm during the commission of a crime, adding a total of 20 consecutive years to the life sentences. The remaining verdicts either merged or were vacated by operation of law. On March 29, 2012, Appellant filed a motion for new trial, which he amended on May 30, 2014. After a hearing, the trial court entered an order denying the motion on September 22, 2014. On September 30, 2014, Appellant filed a notice of appeal directed to the Court of Appeals, which he amended on April 15, 2015, to properly direct the appeal to this Court. The case was docketed here for the September 2016 term and submitted for decision on the briefs.

2

two more times.  However, Patel was still alive.  Norwood also stabbed Patel several times in an attempt to "finish[ ] [him] off" before he and his co-defendants ran away.  However, Patel continued to live and was still gasping for air after the assailants left the scene.  Patel did die soon thereafter, though, before police arrived.  The State's medical examiner testified that Patel died, not from the stab wounds inflicted by Norwood, but from a gunshot wound inflicted to his neck by [Appellant].

Norwood v. State, 297 Ga. 226, 226-227 (773 SE2d 225) (2015).  See also Lucas v. State, 331 Ga. App. 455, 455-457 (771 SE2d 142) (2015) (affirming Lucas's non-murder convictions and discussing the evidence presented at trial in more detail).

Appellant contends that the evidence presented at trial was insufficient to support his convictions because the State failed to prove his role in the crimes and the testimony of the State's witnesses was speculative and unreliable.  However, "'[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" Vega v. State, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) (citation omitted).  When viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was legally sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was

convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); OCGA § 16-2-20 (defining parties to a crime). See also Norwood, 297 Ga. at 227 (1) (affirming Norwood's convictions based on review of the same evidence).

2. Appellant asserts that the trial court erred in denying his motion to dismiss Counts 14 and 15 of the indictment due to the jury's inability to distinguish these two identical counts and the failure of each count to name a victim. Counts 14 and 15 each charged Appellant and his co-defendants with:

> the offense of POSSESSION OF A WEAPON DURING THE COMMISSION OF A CERTAIN CRIMES [sic] for that the said accused in the County of Clayton and State of Georgia, on the 18th day of January, 2009, did have on accused's person a firearm, to wit: a certain handgun, during the commission of the crime of aggravated assault.

Appellant filed his motion to dismiss these counts on the first day of his trial in February 2012.

To the extent that Appellant was raising a general demurrer to Counts 14 and 15, his motion was not untimely, see State v. Eubanks, 239 Ga. 483, 485 (238 SE2d 38) (1977) (holding that "[a] general demurrer challenges the very validity of the indictment and may be raised anytime"), but it was meritless.

4

The true test of the sufficiency of an indictment that will withstand a general demurrer is . . . as follows: If all the facts which the indictment charges can be admitted, and still the accused be innocent, the indictment is bad; but if, taking the facts alleged as premises, the guilt of the accused follows as a legal conclusion, the indictment is good.

Lowe v. State, 276 Ga. 538, 539 (579 SE2d 728) (2003) (citation and punctuation omitted). See also Dorsey v. State, 279 Ga. 534, 538 (2) (615 SE2d 512) (2005) ("When analyzing a general demurrer, the question is whether a defendant can admit to the conduct [alleged] and still be innocent of the crime."). As relevant here, OCGA § 16-11-106 (b) says:

Any person who shall have on or within arm's reach of his or her person a firearm . . . during the commission of, or the attempt to commit: (1) Any crime against or involving the person of another . . . and which crime is a felony, commits a felony . . . .

Appellant would not be innocent of this crime if he admitted that, "on the 18th day of January, 2009, [he] did have on [his] person a firearm, to wit: a certain handgun, during the commission of the crime of aggravated assault," which is a felony against another person. Accordingly, neither Count 14 nor Count 15 of the indictment was subject to a general demurrer.

To the extent that Appellant was demanding to know to which of the two aggravated assault counts alleging use of a firearm Count 14 and Count 15 were

5

referring, or the name of the victim of the predicate aggravated assault, then his motion was a special demurrer, and Appellant forfeited his claim by failing to file it within ten days after May 6, 2010, the date that he waived arraignment. See OCGA § 17-7-110 ("All pretrial motions, including demurrers and special pleas, shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court."); Palmer v. State, 282 Ga. 466, 468 (651 SE2d 86) (2007) (holding that OCGA § 17-7-110's deadline applies to special demurrers); Bighams v. State, 296 Ga. 267, 270 (2) n.4 (765 SE2d 917) (2014) (holding that if a defendant waives arraignment, § 17-7-110's deadline runs from the date that the waiver of arraignment is filed). Appellant filed his motion to dismiss Counts 14 and 15 nearly 21 months after the statutory deadline, and there is no indication that the trial court granted him an extension. See Dasher v. State, 285 Ga. 308, 310 (2) (676 SE2d 181) (2009) ("The failure to file a timely special demurrer seeking additional information constitutes a waiver of the right to be tried on a perfect indictment.").

It should be noted, however, that although the jury found Appellant guilty of both Count 14 and Count 15, the trial court properly entered a judgment of conviction and sentence on only one of the two entirely duplicative counts

6

(Count 14). See, e.g., <u>Mitchell v. State</u>, 337 Ga. App. 841, 847 (4) (b) (789 SE2d 797) (2016) ("[I]f 'two charges are indistinguishable because all of the averments . . . were identical, only one sentence may be imposed.'" (citation omitted)), disapproved on other grounds by <u>Quiller v. State</u>, 338 Ga. App. 206, 209 n. 3 (789 SE2d 391) (2016).

3.     Finally, citing <u>Bruton</u>, 391 U. S. 123, Appellant contends that the admission of State's Exhibit 102 violated the Confrontation Clause of the Sixth Amendment. <u>Bruton</u> held that a defendant's right to be confronted with the witnesses against him is violated when he is tried jointly with a co-defendant who does not testify and the court admits an out-of-court statement by the co-defendant that directly inculpates the defendant. See id. at 135-137; <u>Sutton v. State</u>, 295 Ga. 350, 353 (3) (759 SE2d 846) (2014). Exhibit 102 was a signed, handwritten statement that co-defendant Lucas's uncle, who testified at the trial, gave to the police before trial. In the written statement, the uncle repeated co-defendant Norwood's oral statement to him that "they would have nothing on them saying how Brandon [Norwood] set up the robbery" if Appellant "would have just kept his mouth close[d]." The exhibit thus includes two levels of out-of-court statements offered for the truth of the matter asserted: (1) the written

7

statement that the uncle gave to the police; and (2) Norwood's oral statement to the uncle that was embedded in that writing. Appellant challenges only the second level — the statement that his co-defendant Norwood made to Lucas's uncle.[2]

Norwood's statement to Lucas's uncle was subject to a Confrontation Clause challenge under <u>Bruton</u> only if the statement was testimonial. See <u>Billings v. State</u>, 293 Ga. 99, 103-104 (4) (745 SE2d 583) (2013) ("[T]he rule set forth in <u>Bruton</u> . . . does not apply to *non-testimonial* out-of-court statements made by such a co-defendant." (emphasis in original)). A statement is testimonial if its primary purpose was to establish evidence for use in a future prosecution. See <u>Favors v. State</u>, 296 Ga. 842, 845 (2) (770 SE2d 855) (2015). Norwood's statement — which was made shortly after the crimes and before any arrests to a friend's uncle rather than to police officers investigating a crime — clearly was not intended for use in a future prosecution and cannot be

---

[2] The first level of out-of-court statement — the writing itself — was not made by a co-defendant of Appellant, so there could be no <u>Bruton</u> issue. In terms of the rules of evidence, the writing was admitted as a prior inconsistent statement under former OCGA § 24-9-83 after Lucas's uncle testified that he was not sure that Norwood was the person who said what was recounted in the written statement; the uncle later testified that Norwood did not say any of what was in the written statement. The trial was in 2012, so Georgia's new Evidence Code, which took effect in 2013, did not apply. In the new Evidence Code, the admission of prior inconsistent statements is primarily governed by OCGA § 24-8-801 (d) (1).

considered testimonial.  See <u>Billings</u>, 293 Ga. at 104 (4).  Indeed, Appellant

does not even argue that Norwood's statement to the uncle was testimonial.

Accordingly, the admission of that statement did not violate <u>Bruton</u>.[3]

Judgment affirmed.  All the Justices concur.


Decided February 6, 2017.

Murder. Clayton Superior Court. Before Judge Carter.

<u>Darrell B. Reynolds, Sr.</u>, for appellant.

<u>Tracy Graham Lawson, District Attorney, Elizabeth A. Baker, Kathryn L. Powers, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General</u>, for appellee.

---

[3] In terms of the rules of evidence, Norwood's out-of-court statement to Lucas's uncle was admissible against Appellant under the co-conspirator exception to the rule against hearsay.  See former OCGA § 24-3-5; <u>Billings</u>, 293 Ga. at 104 (4).  See also OCGA § 24-8-801 (d) (2) (E) (new Evidence Code).