NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 12, 2025

S25A0862.  IVORY v. THE STATE.

PETERSON, Chief Justice.

Larry Ivory appeals his convictions related to the armed robbery and murder of Deontavious Wright. On appeal, Ivory argues that (1) the evidence was not constitutionally sufficient to sustain his convictions, (2) the trial court erred in denying his *Bruton*[1] motions, and (3) the trial court erred in denying his motion to sever. We conclude that the evidence was constitutionally sufficient; the statements that Ivory contends were admitted in violation of his Confrontation Clause rights under *Bruton* were non-testimonial, and so *Bruton* does not apply; and Ivory has failed to demonstrate that the trial court abused its discretion when it denied his motion

---

[1] See *Bruton v. United States*, 391 U.S. 123 (88 SCt 1620, 20 LE2d 476) (1968).

to sever. Accordingly, we affirm.[2]

The evidence at trial showed the following. In March of 2015, Deontavious lived in an apartment with his brother Sharonte Wright, his friend John Davis, and Davis's sister Kiana Davis.

---

[2] The crimes occurred on March 13, 2015. On August 28, 2015, a Fulton County grand jury indicted Ivory and co-defendants Tony Rucker and Aaron Simmons with the malice murder of Deontavious Wright (Count 1), felony murder of Deontavious predicated on home invasion, armed robbery, aggravated assault with a deadly weapon, and burglary (Counts 2, 3, 4, 5), home invasion (Count 9), armed robbery of Deontavious (Count 10), aggravated assault with a deadly weapon of Deontavious (Count 11), aggravated assault with a deadly weapon of Sharonte Wright (Count 12), burglary (Count 13), cruelty to children involving J.D. and T.B. (Counts 14 and 15), and possession of a firearm during the commission of a felony (Count 16). Ivory was also charged with the felony murder of Deontavious predicated on possession of a firearm by a first offender probationer (Count 6) and possession of a firearm by a first offender probationer (Count 17).

Following a joint jury trial held from November 7 to 17, 2016, Ivory was found guilty of all counts except the malice murder of Deontavious (Count 1) and the aggravated assault of Sharonte (Count 12). On November 23, 2016, the trial court sentenced Ivory to life in prison for the felony murder of Deontavious predicated on home invasion (Count 2), ten years in prison for the armed robbery of Deontavious (Count 10), ten years in prison for the aggravated assault with a deadly weapon of Deontavious (Count 11), 12 months in prison for each count of cruelty to children (Counts 14 and 15), five years in prison for possession of a firearm during the commission of a felony (Count 16), and five years in prison for possession of a firearm by a first offender probationer (Count 17). The remaining counts merged or were vacated by operation of law.

Ivory timely filed a motion for a new trial on November 29, 2016, which was amended. On August 17, 2022, Ivory filed a notice of appeal. On January 29, 2025, the trial court denied Ivory's motion for new trial, and Ivory's previously filed premature notice of appeal ripened. See *Southall v. State*, 300 Ga. 462, 465 (1) (796 SE2d 261) (2017). On March 20, 2025, the case was docketed to the April 2025 term of this Court and submitted for a decision on the briefs.

Deontavious often sold drugs out of the apartment. On the morning of March 13, 2015, the four roommates were at the apartment with Deontavious's girlfriend's three-year-old child T.B., Kiana's four-year-old child J.D., and the mother of John's children, Chanteka Lynch. A woman knocked on the door, Deontavious opened the door, and the three co-defendants, Tony Rucker, Aaron Simmons, and Ivory, pushed past the woman into the apartment.

Rucker entered the apartment and pointed a gun at Deontavious's chest; meanwhile Simmons and Ivory stood guard at the front door. Rucker demanded Deontavious empty his pockets and took Deontavious's drugs and money. Rucker then forced Deontavious into the bedroom where Kiana and J.D. were and demanded that Kiana turn over any drugs and money. Kiana told Rucker that she did not have any drugs or money. Rucker then forced Deontavious back to the living room to retrieve Deontavious's gun; John, Sharonte, Lynch, and T.B. were in that room. After Deontavious retrieved his gun and handed it over, Rucker shot Deontavious multiple times.

After the shooting ceased, Rucker, Simmons, and Ivory ran out of the apartment. Kiana called the police, and officers were dispatched to the area around 10:21 a.m. Deontavious died at the scene.

At trial, John testified that although Ivory was wearing a mask, he recognized Ivory because he had seen Ivory around the apartment complex wearing the same clothing. Similarly, Sharonte testified that he had seen Ivory around the apartment complex, and he recognized Ivory from his eyebrows, hair, fingernails (which were usually bitten down), hand tattoos, and voice. Additionally, Lynch testified at trial that she knew Ivory because she was friends with Ivory's child's mother, April Battle, and also recognized his distinctive blue jacket and hand tattoos.

Ivory testified in his own defense that on the morning of March 13, 2015, he was at his father's home until around noon. Additionally, Battle testified that on the morning of the shooting, Ivory was with her at Ivory's father's home until she left around 11:00 a.m. In rebuttal, the State presented cell-site location

4

evidence, which showed that on March 13, 2015, Ivory's cell phone was located near his father's home at around 9:04 a.m. But at 10:02 a.m., Ivory's cell phone was near the apartment complex where the shooting occurred.[3]

1. Ivory contends that the evidence was not constitutionally sufficient to support his convictions because there was no forensic evidence connecting him to the crimes and the eyewitnesses did not see the face of the masked assailant. We disagree.

When reviewing the sufficiency of the evidence as a matter of constitutional due process, we view the evidence in the light most favorable to the verdicts and inquire whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). "In conducting that evaluation, it is not the job of this Court to weigh the evidence on appeal or resolve conflicts in trial testimony[.]" *Mims v. State*, 310 Ga. 853, 854 (854 SE2d 742) (2021)

---

[3] The State also presented evidence that Ivory was on probation at the time of the crimes.

(citation and punctuation omitted).

The fact that the State did not produce forensic evidence connecting Ivory to the crime scene "does not mean that the evidence was insufficient." *Jones v. State,* 319 Ga. 758, 761 (2) (906 SE2d 699) (2024). "Although the State is required to prove its case with competent evidence, there is no requirement that it prove its case with any particular sort of evidence." Id. (punctuation and citation omitted). Here, the State presented evidence that a masked man entered the apartment without permission and guarded the door while Rucker held Deontavious at gunpoint, took Deontavious's drugs, money, and gun, and then shot Deontavious in the presence of two children. Three eyewitnesses — John, Sharonte, and Lynch — testified that Ivory was that masked man. Ivory challenges the credibility of these eyewitnesses, but this was a matter for the jury to resolve. See *Green v. State*, 304 Ga. 385, 387-388 (1) (818 SE2d 535) (2018) ("It is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not

6

render the evidence insufficient."). Additionally, cell-site location data showed that Ivory's phone was near the crime scene when the shooting occurred, corroborating the eyewitnesses' testimony that Ivory was one of the perpetrators. The trial evidence was therefore constitutionally sufficient to support Ivory's convictions, at the very least, as a party to the crimes. See OCGA § 16-2-20 (a) ("Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime."); *Byers v. State*, 311 Ga. 259, 265 (1) (857 SE2d 447) (2021) ("[A] defendant need not be charged specifically as a party to the crime in order to support a conviction based on that theory."); *Powell v. State*, 291 Ga. 743, 745 (1) (733 SE2d 294) (2012) (holding evidence was sufficient to support the defendant's murder conviction as a party to the crime even if the defendant's companion, and not the defendant, fired the fatal shot, as they were engaged in a common enterprise at the time of the shooting and it could be reasonably inferred from the evidence that they shared a criminal intent).

2. Ivory next argues that the trial court erred in allowing

Genesis Woodard, the mother of Simmons's child, to testify about statements Simmons made after the shooting. Specifically, Woodard testified that in May of 2015, Simmons told her that he "didn't kill nobody" and "[i]t was just a robbery that went wrong." Woodard testified that Simmons did not tell her who he was with or who planned the robbery. The prosecutor followed up, asking, "You don't remember telling Detective Berhalter that [Simmons] was with [Ivory]?" to which Woodard replied, "No." Ivory contends that the trial court erred by overruling his *Bruton* objection to Woodard's testimony. But *Bruton* applies only to testimonial statements, not to non-testimonial statements like Simmons's to Woodard, so the trial court did not err in overruling Ivory's objection.[4]

"A defendant's Sixth Amendment right to be confronted by the witnesses against him is violated under *Bruton* when co-defendants

---

[4] Ivory argues that there were multiple *Bruton* violations, but his brief focuses only on Woodard's testimony about Simmons's statements. Thus, to the extent Ivory argues that any other witness's testimony violates *Bruton*, those arguments are abandoned. See Supreme Court Rule 22 ("Any enumerated error or subpart of an enumerated error not supported by argument, citations to authority, and citations to the record shall be deemed abandoned.").

are tried jointly and the testimonial statement of a co-defendant who does not testify at trial is used to implicate the other co-defendant in the crime." *Haney v. State*, 305 Ga. 785, 791 (3) (827 SE2d 843) (2019). "A statement is testimonial if its primary purpose was to establish evidence for use in a future prosecution." *Allen v. State*, 300 Ga. 500, 504 (3) (796 SE2d 708) (2017). Here, Simmons's statements — which were made before his arrest to his girlfriend — were not intended for use in a future prosecution and therefore were not testimonial.[5] See *Billings v. State*, 293 Ga. 99, 104 (4) (745 SE2d 583) (2013) ("The statements by [the co-defendant] at issue here were made to his girlfriend more than two weeks before he was arrested; they were not a product of interrogation by law enforcement officers during an investigation intended to produce evidence for a criminal prosecution" and thus were not testimonial.); see also *Allen*, 300 Ga. at 504 ("[The co-defendant's] statement — which was made shortly after the crimes and before any arrests to a friend's uncle rather than to police officers investigating a crime —

---

[5] Simmons was arrested on August 9, 2015.

clearly was not intended for use in a future prosecution and cannot be considered testimonial.").

"Once a determination is made that a statement is nontestimonial in nature, normal rules regarding the admission of hearsay apply." *Glover v. State*, 285 Ga. 461, 462 (2) (678 SE2d 476) (2009) (punctuation and citation omitted); see also *Billings,* 293 Ga. at 104. Ivory does not argue that Simmons's statements to Woodard constitute inadmissible hearsay. Accordingly, this claim fails.

3. Finally, Ivory claims that the trial court abused its discretion by denying his motion for severance.

> A trial court has broad discretion to grant or deny a motion to sever in a murder case in which the death penalty is not sought. When ruling on such a motion, a court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses. To show that the trial court abused its discretion in denying a motion to sever, a defendant must do more than raise the existence of antagonistic defenses or the possibility that a separate trial would have given him a better chance of acquittal. The defendant must make a clear showing that a joint trial was so prejudicial as to amount to a denial of his right to due process.

10

*Saylor v. State*, 316 Ga. 225, 230-231 (2) (887 SE2d 329) (2023) (punctuation and citation omitted).

Ivory has failed to demonstrate that the joint trial was so prejudicial as to amount to a denial of his right to due process. First, this case involved only three defendants who were tried for largely the same offenses relating to the same incident. The law and the evidence were substantially the same for all of them, and the State argued that the defendants acted together to commit the crimes. See *Saylor*, 316 Ga. at 231 (2) (holding that trial court did not abuse discretion in denying defendant's motion to sever when the case "involved only three defendants who were tried for almost all the same offenses relating to the same incidents," "[t]he law and evidence were substantially the same for all of them, and the State argued that the defendants acted in concert in committing the crimes"); *Virger v. State*, 305 Ga. 281, 290-291 (4) 824 (SE2d 346) (2019) (same). The jury was also "instructed on mere association, mere presence, and parties to a crime," and it "returned a separate verdict for each defendant pursuant to the trial court's instruction,"

11

demonstrating that the jury was not confused by the law and the evidence in this case. *Harris v. State*, 304 Ga. 276, 280 (3) (818 SE2d 530) (2018). Moreover, Ivory does not point to any specific evidence that was admitted against his co-defendants that the jury may have improperly considered against him (other than his *Bruton* claim that we have already rejected). Rather, Ivory argues that the evidence against him was "qualitatively different" because the eyewitnesses saw his co-defendant's faces but identified him based on "far less reliable indicia." But "severance is not required simply because the evidence against a co-defendant is stronger." *Saylor*, 316 Ga. at 232 (2). Finally, Ivory argues that severance was required because his co-defendant's defenses were antagonistic. But "a defendant must do more than raise the existence of antagonistic defenses" to demonstrate that the trial court abused its discretion in denying a motion to sever. Id. at 231 (2). Ivory has failed to point to specific prejudice from the antagonistic defenses that would have required the trial court to grant his motion to sever. See *Lupoe v. State*, 300 Ga. 233, 242 (2) (c) (794 SE2d 67) (2016); see also *Walter v. State*,

304 Ga. 760, 763-764 (2) (822 SE2d 266) (2018) (where the evidence showed the co-defendants acted in concert, severance was not required where the co-defendants blamed the defendant for the shooting and claimed that they were not present during or did not participate in the murder). Accordingly, Ivory has failed to demonstrate that the trial court abused its discretion in denying his motion to sever, and this claim fails.

*Judgment affirmed. All the Justices concur, except Land, J., not participating.*