## S07A1663. STARKS v. THE STATE.
(656 SE2d 518)

THOMPSON, Justice.

Defendant Jonathan Starks was convicted of malice murder and aggravated assault in connection with the death of Jimmy Jackson.[1] He appeals, asserting, inter alia, the trial court erred in refusing to suppress inculpatory statements. Finding no error, we affirm.

---

[1] The crimes occurred on October 8, 2002. Defendant was indicted on January 7, 2003, and charged with malice murder, felony murder, and two counts of aggravated assault. Trial commenced on February 15, 2005, and the jury returned its verdict on February 18, finding defendant guilty on all counts. Defendant was sentenced to life in prison for malice murder, and 15 years consecutive for aggravated assault. The other convictions were merged and vacated. See *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). Defendant's timely filed motion for new trial was denied on March 28, 2007. Defendant filed a notice of appeal on April 23, 2007. The case was docketed in this Court on July 19, 2007, and orally argued on October 15, 2007.

In the early hours of October 9, 2002, defendant approached a triage nurse in the Grady Hospital psychiatric ward and asked to be admitted. Defendant told the nurse that he had strangled and killed someone. The nurse called hospital security and the police were summoned. When they arrived, defendant told Officer Gavrin Lindsey that he had killed a man named Jimmy who used an electric wheelchair.

Detectives were sent to the scene of the crime, a residential group home for the elderly and handicapped. There they found the body of Jimmy Jackson in his apartment. The medical examiner determined that the victim was strangled to death, and that he suffered a severe cervical spine fracture and extensive bruising to his neck. It was also determined that the victim was bruised upon his face, chest, and scalp, and that these bruises were the result of blunt force trauma, rather than strangulation.

In subsequent interviews with detectives, defendant stated that he killed Jackson by strangling him. He admitted that he did not argue with Jackson and that Jackson did not provoke him. He added that he stayed in Jackson's apartment for about ten minutes, took Jackson's television set and sold it for a nominal sum, purchased wine and beer with the money, and consumed those beverages before walking to Grady Hospital.

At trial, defendant testified that he had an argument with Jackson; that Jackson asked him to leave but he refused; that he thought Jackson was going to retrieve a weapon; that he grabbed Jackson from behind and put him in a "sleeper" hold to restrain him; and that he did not intend to cause Jackson any harm.

1. The evidence was sufficient to enable any rational trier of fact to find defendant guilty beyond a reasonable doubt of malice murder and aggravated assault with a deadly weapon (hands). *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The aggravated assault conviction did not merge as a matter of fact with the murder conviction because the evidence demonstrated that defendant inflicted a severe (but non-fatal) beating upon the victim that was separate and distinct from the choking and strangling which killed him. *Scott v. State*, 276 Ga. 195, 196 (576 SE2d 860) (2003).

2. During its case-in-chief the State introduced two separate, recorded statements which defendant gave to detectives. The first statement was made to Detective Michael Carter, who interviewed defendant in a waiting room of the psychiatric ward. The second statement took place several days later when defendant was questioned by Detective John Brown at the precinct. It is undisputed that

defendant was given *Miranda* warnings before making these statements to the detectives. Defendant asserts the trial court erred in refusing to grant his motion to suppress these statements. We disagree.

A trial court's findings on the admissibility of a defendant's statements will not be overturned unless they are clearly erroneous. *Martin v. State*, 264 Ga. 826 (452 SE2d 95) (1995). Here, the trial court refused to suppress the statements defendant gave to Detectives Carter and Brown finding that defendant was informed of his *Miranda* rights, that defendant understood his rights, and that defendant made a rational and intelligent choice to waive his rights and speak with the detectives. Given the totality of the circumstances, including evidence that defendant was not under the influence of drugs or alcohol and appeared to be calm, well-oriented and aware of his surroundings when he agreed to speak with the detectives, we find no error in the trial court's refusal to suppress these statements.

3. Defendant also made a statement to Officer Lindsey shortly after the police arrived at the Grady psychiatric ward. Following a *Jackson-Denno* hearing, the trial court ordered the suppression of defendant's statement to Officer Lindsey because Officer Lindsey was not available to testify.

After defendant testified at trial that he put a "sleeper" hold on the victim because he thought he was going to retrieve a weapon, the State presented the officer's testimony in "rebuttal." See in this connection, *Harris v. New York*, 401 U. S. 222 (91 SC 643, 28 LE2d 1) (1971) (statements procured in violation of *Miranda* and, therefore, inadmissible to establish guilt, can be used for impeachment); *Platt v. State*, 163 Ga. App. 776 (296 SE2d 113) (1982); *Alexander v. State*, 138 Ga. App. 618 (226 SE2d 807) (1976). Because defendant did not object to Officer Lindsey's testimony when it was offered in rebuttal,[2] he will not be heard to complain on appeal that his statement should have been suppressed because it was involuntarily made. See *Mallory v. State*, 230 Ga. 657 (2) (198 SE2d 677) (1973) (defendant cannot complain of admissibility of confession for first time in this court).

4. Defendant also asserts the trial court erred in denying his motion to suppress his statements to the police because they followed on the heels of the triage nurse's breach of psychiatrist-patient confidentiality and, therefore, should have been excluded as being "fruit of the poisonous tree." Assuming, for the sake of argument, a

---

[2] The officer testified that he went to the psychiatric ward of Grady Hospital in full uniform; that he walked up to defendant and asked if he had anything to say; and that defendant responded by saying that he killed a man named Jimmy for no reason.

psychiatrist-patient relationship arose between defendant and the triage nurse, and assuming further that defendant's statements to the nurse were made in confidence, it cannot be said that the nurse's breach of confidence precluded the admission of defendant's subsequent statements. See generally *Wilson v. Zant*, 249 Ga. 373, 378 (290 SE2d 442) (1982) (exclusionary rule does not apply to "fruit" of a voluntary but *Miranda*-tainted statement). See also *Reinhardt v. State*, 263 Ga. 113, 115-116 (4) (428 SE2d 333) (1993).

5. The trial court did not err by refusing to permit defendant to ask a prospective juror if she had "enough knowledge to determine whether or not a person is suffering from mental illness issues." A trial court is vested with a broad discretion to limit the scope of voir dire with regard to abstract or technical legal matters. *McGinnis v. State*, 258 Ga. 673, 674 (3) (372 SE2d 804) (1988).

6. Defendant asserts trial counsel rendered ineffective assistance in several respects: (a) failing to argue that defendant's statements to the police were inadmissible because the triage nurse violated the psychiatrist-patient privilege; (b) failing to call Starks to testify in support of the motion to suppress; (c) ignoring Starks' desire to accept a guilty plea; (d) failing to present Starks' desired defense — not guilty by reason of insanity; and (e) failing to object to a misstatement of the reasonable doubt standard in the State's closing argument. We disagree. In reviewing a claim of ineffective assistance of counsel, we defer to the trial court's findings of fact, which are to be upheld on appeal unless clearly erroneous; we give no such deference, however, to a trial court's legal conclusions. *Suggs v. State*, 272 Ga. 85, 88 (526 SE2d 347) (2000).

(a) "The standard for determining ineffective assistance of counsel is whether trial counsel's performance was deficient and, if so, whether the deficient performance prejudiced the defense." *Woods v. State*, 271 Ga. 452, 453 (2) (519 SE2d 918) (1999), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Even if it can be said that trial counsel should have argued that the triage nurse breached the psychiatrist-patient privilege, we can discern no prejudice in view of our ruling in Division 2.

(b) Trial counsel testified that he believed defendant's testimony at the hearing on the motion to suppress might be more harmful than helpful because defendant had given varying accounts of what occurred. Thus, counsel's decision not to have defendant testify at the motion to suppress hearing was a matter of trial strategy.

Informed strategic decisions do not amount to inadequacy under *Strickland*. [Cit.] "The fact that appellant and his present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel

does not require a finding that appellant received represen-
tation amounting to ineffective assistance."

*DeYoung v. State*, 268 Ga. 780, 785-786 (5) (493 SE2d 157) (1997).

(c) Trial counsel testified that, although defendant initially wanted to accept a plea offer, he ultimately changed his mind and said that he wanted to go to trial. See generally *Chapman v. State*, 273 Ga. 348, 351 (541 SE2d 634) (2001) (defendant makes decision after full consultation with counsel as to what plea to enter). Defendant has not demonstrated that counsel advised him insufficiently or erroneously in this regard. See generally *Harpe v. State*, 254 Ga. App. 458 (1) (562 SE2d 521) (2002) (defendant failed to show that counsel provided deficient advice concerning plea).

(d) Counsel did not raise an insanity defense because the psychiatrist who examined defendant came to the conclusion that defendant was not legally insane. It was a reasonable trial strategy for counsel to opt to assert self-defense instead of an insanity defense. See *DeYoung v. State*, supra.

(e) In closing argument, the prosecutor told the jury: "If you want to write down what the standard of proof or what must be proven, just write down 'What does my common sense tell me.'" The prosecutor went on to say that reasonable doubt is "not a vague and arbitrary doubt, but a doubt of a fair-minded, impartial juror honestly seeking the truth. It is a doubt based upon common sense and reason. So that is why I say what does my common sense tell me." Defendant asserts trial counsel rendered ineffective assistance by failing to interpose an objection to this portion of the prosecutor's statements. This assertion is without merit. The trial court fully and correctly instructed the jury on the burden of proof. Thus, even if defense counsel would have objected to the prosecutor's statements, the outcome of the trial would not have been different. See *Hayes v. State*, 263 Ga. 15 (426 SE2d 557) (1993). " 'Qualified jurors under oath are presumed to follow the instructions of the trial court.' [Cits.]" *Holmes v. State*, 273 Ga. 644, 648 (543 SE2d 688) (2001).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 28, 2008 —
RECONSIDERATION DENIED FEBRUARY 25, 2008.

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr.*, District Attorney, *Marc A. Mallon, Bettieanne C. Hart*, Assistant District Attorneys, *Thurbert E. Baker*,

*Attorney General, Elizabeth A. Harris, Assistant Attorney General,* for appellee.

S07A1810. VOYLES v. McKINNEY et al.

(657 SE2d 193)

MELTON, Justice.

1. The dispositive issue on appeal is whether the superior court properly dismissed Voyles' petition for writ of mandamus. Voyles argues that his petition for writ of mandamus was proper because Judge McKinney failed to rule on his motions and then set the trial date before the 90-day period to rule on the motions had expired. See OCGA § 15-6-21 (b).[1] However, mandamus is an extreme remedy that

---

---

argued before him or submitted to him without argument, all motions for new trials, injunctions, demurrers, and all other motions of any nature.