310 Ga. 573
FINAL COPY

S20A1102.  GUZMAN-PEREZ v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Appellant, Fernando Guzman-Perez, was convicted of malice murder and concealing the death of another in connection with the death of his wife, Yamilet Rodriguez.[1]  On appeal, Appellant argues that the evidence was insufficient to support his murder conviction and that he was denied constitutionally effective assistance of counsel.  We affirm.

1.    Appellant contends that the evidence presented at trial was insufficient to sustain his murder conviction because the

---

[1] On January 6, 2016, a Gwinnett County grand jury indicted Appellant for malice murder and concealing the death of another.  At a jury trial from August 28-30, 2017, the jury returned guilty verdicts on both charges. Appellant was sentenced to life in prison without the possibility of parole for malice murder and ten years concurrent for concealing the death of another. Appellant filed a motion for new trial on September 6, 2017, which he amended through new counsel on March 15, 2019.  After a hearing, the trial court denied the motion as amended on January 8, 2020.  Appellant timely filed a notice of appeal to this Court.  The appeal was docketed to the August 2020 term of this Court and was submitted for a decision on the briefs.

evidence of his guilt was entirely circumstantial and did not rule out a reasonable hypothesis consistent with his innocence. We disagree.

It is well settled that, when evaluating the sufficiency of evidence as a matter of constitutional due process, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the [factfinder's] assessment of the weight and credibility of the evidence." (Citation and punctuation omitted.) *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013).

Viewed in this light, the evidence presented at trial showed that, prior to Rodriguez's death, Appellant had been complaining to his friends and co-workers that he was unsatisfied with the lack of intimacy in his marriage. After midnight on Wednesday, October 7,

2015, Rodriguez, along with her neighbor and co-worker, Victor Ruiz, returned home to their two-story apartment building after finishing their workday. Appellant and Rodriguez lived in an apartment on the top floor of the building, and Ruiz lived in an apartment on the first floor next to the stairwell. Rodriguez and Ruiz returned to their respective apartments, and Ruiz stayed up for a couple of hours to watch television. He heard no noise in the stairwell that he shared with Appellant and Rodriguez.

The next day, Appellant walked down to Ruiz's apartment and asked him if he had seen Rodriguez. Appellant remarked that she might have left with another man. Ruiz told Appellant he had not seen Rodriguez since they had returned home from work. Later that same day, Appellant called Otoniel Garduno, the pastor of his church, and asked for contact information for a new pediatrician. During this conversation, Appellant made no mention of his wife's disappearance. On Sunday, October 11, Appellant took his and Rodriguez's children to church without their mother. When Pastor Garduno inquired into her whereabouts, Appellant said that she had

3

left him and their children.

On the morning of October 12, the couple's children, Rodriguez's sisters, and Pastor Garduno and his wife all gathered at Appellant's home and urged him to inform the police that Rodriguez was missing. Appellant initially refused, claiming that he did not want to get Rodriguez in trouble as she had prior charges of abandonment of their children. Instead, Appellant led the group on a search for Rodriguez, stopping at nearby jails, a motel near the family home, and her place of work, but they failed to locate her or obtain any new information as to her whereabouts. After this, the group finally convinced Appellant to report that his wife was missing.

When the police responded to Appellant's missing person call on the afternoon of October 12, Appellant informed officers that Rodriguez had left a few days prior, after the couple had an argument.

During the investigation into the missing person report, Appellant consented to a search of the couple's apartment. Officers

noted nothing out of the ordinary during their search. They asked Appellant additional questions, and he told them, once again, that Rodriguez left after an argument, this time mentioning that she had taken a debit card and $1,700 with her.

Then, on Thursday, October 15, Appellant's boss at Express Oil Change was removing a stack of tires in a wooded area next to the dumpsters behind the store, when he noticed a pungent smell coming from an orange garbage bag behind the tires. He noted that the bag did not come from the shop because they only used black trash bags. He then called the police. Responding officers located Rodriguez's decomposing body inside the orange bag.

Dr. Carol Terry, the State's medical examiner, performed the autopsy of Rodriguez and testified at trial that her body was wrapped in four separate garbage bags. The first layer contained two garbage bags, one pulled up from the feet and one pulled down from the head, with tape holding Rodriguez's body in the fetal position and wrapped tightly around her neck. Rodriguez's body was then placed into two additional garbage bags.

5

Dr. Terry found a single blunt force injury to the back of Rodriguez's neck, which, Dr. Terry opined, was not sufficient to have caused Rodriguez's death. Rodriguez's body had signs of significant decomposition including bloating, discoloration, and skin slippage. And, due to the severe decomposition of the body, Dr. Terry could not determine with any certainty the cause of death. However, given the state in which Rodriguez's body was found, Dr. Terry opined that the manner of death was homicide.

Officers obtained a search warrant for the couple's shared residence, and, during this second search, they located orange trash bags. A forensic analyst matched the bags used to conceal Rodriguez's body to the roll of garbage bags found in Appellant's home. Officers also found bloodstains in the trunk of Appellant's car, which were later matched to Rodriguez.

Appellant was taken into custody and brought to the Lawrenceville Police Department for questioning. There, he told officers that Rodriguez arrived home from work on October 7 and that the couple showered together. Appellant wanted to have sex,

but Rodriguez refused. Appellant tried to make advances again when the couple was in bed, and Rodriguez became annoyed. Appellant told officers that Rodriguez got out of bed, changed clothes, and left after the couple had an argument. Appellant stated that he did not follow Rodriguez at that time.

When officers confronted Appellant with the orange trash bags and the victim's body, his head dropped, and he began to cry. Appellant then told police that he did chase after Rodriguez when she left the apartment, and that when he tried to stop her at the top of the staircase, she moved to avoid his grasp and fell down the stairwell. Appellant said that he ran down the stairs and checked Rodriguez for a pulse but was unable to find one. Appellant became nervous that law enforcement would not believe what happened, so he wrapped the victim's body in garbage bags, drove to the Express Oil Change, and left Rodriguez there.

Regarding Appellant's claim that the evidence was constitutionally insufficient to support his murder conviction, based on the evidence presented at trial, the jury was authorized to find

Appellant guilty of murder beyond a reasonable doubt. See *Jackson*, 443 U. S. at 319.[2]

Appellant further alleges that, because the State's case was based solely on circumstantial evidence, and because he presented a "reasonable" hypothesis of his innocence as it pertained to the murder charge that the State did not discredit, the evidence was insufficient to support his murder conviction pursuant to OCGA § 24-14-6. "In cases like this one where convictions are based on circumstantial evidence, the evidence must be 'consistent with the hypothesis of guilt' and 'exclude every other reasonable hypothesis save that of the guilt of the accused.'" *Collett v. State*, 305 Ga. 853, 855 (1) (828 SE2d 362) (2019) (quoting OCGA § 24-14-6). Whether

---

[2] Appellant does not challenge the sufficiency of the evidence concerning his conviction for concealing the death of another. Consistent with our customary practice in murder cases, we have reviewed the evidence sua sponte, and we conclude that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Appellant was guilty of concealing the death of another. See *Jackson*, supra. But see *Davenport v. State*, 309 Ga. 385, 391-392 (4) (846 SE2d 83) (2020) (explaining that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020).

the evidence excludes every other reasonable hypothesis is a question for the factfinder. See id. "Not every hypothesis is reasonable, and the evidence does not have to exclude every conceivable inference or hypothesis; it need rule out only those that are reasonable." (Citation omitted.) *Akhimie v. State*, 297 Ga. 801, 804 (1) (777 SE2d 683) (2015). Where a rational fact finder is authorized to find that the evidence ruled out all other reasonable hypotheses, that finding will not be disturbed on appeal unless the verdict is insupportable as a matter of law. Id.

Appellant claims that the State's evidence did not exclude the reasonable hypothesis that Rodriguez simply fell down the stairs and that Appellant did not cause her death. We disagree. The evidence at trial showed that Appellant had been complaining that he was unsatisfied with the intimate relationship he had with his wife prior to her death, and that Rodriguez died after a fight with her husband about this very topic. Appellant consistently lied to family, friends, law enforcement, and a religious leader as to his wife's whereabouts. Furthermore, he denied involvement in her

9

injuries and the concealing of her death until confronted with physical evidence. Additionally, although Appellant told officers that Rodriguez fell to her death from the top of their apartment stairwell, the neighbor who lived next to the stairwell heard no commotion or noises on the evening of Rodriguez's death. Finally, Appellant went to great lengths to hide his wife's death, wrapping her body in numerous garbage bags and hiding it behind a stack of tires at his workplace.

Based on the foregoing, the jury was not required to find that Appellant's hypothesis that Rodriguez simply fell down the stairs was a reasonable one. See *Collett*, 305 Ga. at 855-856 (1); *Black v. State*, 296 Ga. 658 (1) (769 SE2d 898) (2015). Instead, the jury could reasonably infer that Appellant concealed his wife's death and then lied to the police, his family, and a religious leader about his wife's disappearance for more than a week because he had committed the murder. See *Jones v. State*, 292 Ga. 656 (1) (a) (740 SE2d 590) (2013) (criminal intent is a question for the factfinder, and can be inferred from the defendant's conduct before, during, and after the

10

commission of the crimes).  Accordingly, the evidence was sufficient to support Appellant's murder conviction.

2.  Appellant claims that he received constitutionally ineffective assistance of counsel because his trial counsel failed to consult with and present expert witness testimony to rebut the State's medical expert.  In order to establish that he received ineffective assistance of counsel, Appellant

> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citations and punctuation omitted.) *Pruitt v. State*, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007).  "Typically, the decision whether to present an expert witness is a matter of trial strategy that, if reasonable, will not sustain a claim of ineffective assistance." *Matthews v. State*, 301 Ga. 286, 289 (2) (800 SE2d 533) (2017).  And, "[t]rial tactics and strategy . . . are almost never adequate grounds for finding trial counsel ineffective unless they are so patently

unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *McNair v. State*, 296 Ga. 181, 184 (2) (b) (766 SE2d 45) (2014).

At the motion for new trial hearing, Appellant presented the testimony of Dr. Kris Sperry, an expert in forensic pathology, and also called his trial counsel as a witness. Dr. Sperry opined that, based upon his review of the evidence, the victim's death could have been caused by an accidental fall down the stairs. However, he could not state with any certainty the cause of the victim's death, and, because of this, he would have listed the manner of death as "undetermined" rather than "homicide."

Trial counsel testified that he received and reviewed the State's discovery material, including the report from Dr. Terry. Counsel considered whether to hire an expert in this case, but chose not to because he felt he could get the medical evidence he needed through a thorough cross-examination of the State's expert. Regarding Dr. Sperry's motion for new trial testimony, trial counsel stated that, as a matter of strategy, he would not have pursued the theory that the

victim's death was an accident, explaining:

> I didn't — I still don't see it now; I mean, quite frankly, I just don't. I mean, the defense was — it always is "we didn't do anything to her." And I found if you give the jury, "Well if you don't believe A, maybe it was B," then that dilutes [theory A] as a defense . . . and so from that standpoint, I mean, the defense was always, "I didn't touch her. I didn't lay a hand on her. I certainly didn't kill her." And it maintained that way from start to finish.

Additionally, counsel felt that it would have been extremely difficult to convince a jury that the victim's death was an accident based on the facts of the case, which included Appellant's numerous conflicting statements to witnesses and law enforcement and his attempt to conceal the body.

Based on the foregoing, the record shows that trial counsel's decision not to hire an expert in forensic pathology was a matter of reasonable trial strategy. As we have previously explained,

> [i]nformed strategic decisions do not amount to inadequacy under *Strickland*. The fact that appellant and his present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that appellant received representation amounting to ineffective assistance.

13

(Citation and punctuation omitted.) *Starks v. State*, 283 Ga. 164, 167-168 (6) (b) (656 SE2d 518) (2008).  And, because Appellant cannot show that his trial counsel acted deficiently, his claim of ineffective assistance of counsel fails.  See *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012) ("If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." (Citations omitted.)).

*Judgment affirmed.  Nahmias, P. J., and Boggs, Peterson, Bethel, Ellington, and McMillian, JJ., concur.  Warren, J., not participating.*

DECIDED DECEMBER 21, 2020.
Murder. Gwinnett Superior Court. Before Judge Conner.
*Lynn M. Kleinrock*, for appellant.
*Daniel J. Porter, District Attorney, Samuel R. d'Entremont, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Mark S. Lindemann, Assistant Attorney General*, for appellee.